## 20386

In the Matter of Edna SMITH, Petitioner.
(233 S. E. (2d) 301)

*Messrs. Laughlin McDonald,* of Atlanta, Ga., *Ray P. McClain,* of Charleston, and *Melvin H. Wulf,* of New York, N. Y., *for Petitioner.*

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *A. Camden Lewis* and *Richard B. Kale, Jr., Asst. Attys. Gen.,* of Columbia, *for Respondent.*

March 17, 1977.

*Per Curiam:*

This matter is before the Court pursuant to an order, issued under Section 34 of the Rule on Disciplinary Procedure, granting petitioner's request for review of a private reprimand administered by the Board of Commissioners on Grievances and Discipline (Board). Petitioner is a member of the Bar of this State and the private reprimand was issued upon findings that she had violated Disciplinary Rules 2-103(D)(5)(a) and (c) and 2-104(A)(5) of the Code of Professional Responsibility by soliciting a client on behalf of the American Civil Liberties Union (ACLU).

The grounds urged by petitioner defensively before the Board are basically the same as she now presents to have the findings and private reprimand by the Board set aside. These are:

1. Does the record sustain the findings of the Board that petitioner violated the cited provisions of the Code of Professional Responsibility?

2. Was petitioner's conduct protected by the constitutional guarantees of freedom of speech and association?

3. Is Rule 4(d) of the South Carolina Supreme Court's Rule on Disciplinary Procedure void for vagueness and overbreadth?

4. Did the complaint in this case give petitioner notice of the charge as required by due process of law?

5. Does the record sustain the finding of the Board that there was no retaliatory motive on the part of the office of the Attorney General in this proceeding?

We are convinced that the record amply sustains the finding of the Board that petitioner violated the Code of Professional Responsibility and that disciplinary action was required. While we affirm the findings of the Board that petitioner was guilty of unethical conduct, we conclude that the facts and circumstances are sufficiently aggravated to justify a public, instead of a private, reprimand. Accordingly, this opinion will be published in the Reports of this Court.

This matter was first heard before a Hearing Panel which filed its report and recommendations with the Board. The following portions of the panel report, affirmed by the Board, set forth the material facts and correctly dispose of the issues presented in this appeal:

"The Respondent, Edna Smith, is a practicing attorney in Columbia, South Carolina, having been admitted to the Bar in September 1972. During the period in which the acts complained of in the complaint occurred, respondent was an associate in the Carolina Community Law Firm, in an expense sharing arrangement with each attorney keeping his own fees. One of the associate attorneys was a staff counsel for the ACLU and was a Counsel of Record in the *Pierce* case (hereafter mentioned). She was also a legal consultant of the South Carolina Council on Human Relations, from whom she received compensation, and was an officer of the Columbia Branch of the ACLU, and was a cooperating attorney with the ACLU.

"In response to information received through the South Carolina Council on Human Relations, she contacted one Gary Allen, in Aiken, South Carolina, to arrange for her to talk to people there who had been sterilized. The meeting was held in Aiken during the month of July, 1973, at the

office of Gary Allen. Marietta Williams is a Black woman who had consented to be sterilized by Dr. Clovis Pierce. At the meeting in Gary Allen's office, the respondent advised those present, who included Mrs. Williams and other women who had been sterilized by Dr. Clovis H. Pierce, of their legal rights and specifically that they could bring suit for money damages against Dr. Pierce. There was no further contact between respondent and Mrs. Williams until Mrs. Williams received a letter from respondent dated August 30, 1973. In this letter respondent referred to the meeting in Mr. Allen's office and indicated that the ACLU would like to file a lawsuit for her for money against the doctor who performed the operation. This letter was written on the letterhead of the Carolina Community Law Firm and signed by her as attorney-at-law.

"Prior to the institution of this proceeding, a class action entitled *Jane Doe and Mary Roe, on their behalf and on behalf of all others similarly situated v. Clovis H. Pierce, M.D., et al.,* was commenced in the United States District Court of South Carolina to declare the acts of the defendant in violation of the First, Fourth, Fifth, Eighth, Ninth, Thirteenth and Fourteenth Amendments of the Constitution, to enjoin such acts, and for money damages and attorneys' fees. Respondent contended at a procedural hearing in that case, Judge Blatt's ruling in allowing certain questions to be propounded to a witness involving the contact of the respondent with the witness was *res judicata* or acted as a collateral estoppel against this proceeding, which contention Judge Chapman dismissed as is hereinafter reflected.

"After the filing of this disciplinary proceeding against the respondent, an action was brought in the United States District Court of South Carolina, Columbia Division, to enjoin the members of the Board of Commissioners on Grievances and Discipline, individually and as members of the Board, and the Attorney General of South Carolina from prosecuting or otherwise processing the complaint in

this proceeding. Complainant also prayed for costs, plus attorneys' fees and a declaration that the complaint before the Board was in violation of her rights under the First and Fourteenth Amendments. In dismissing the complaint, on the grounds that the complainant failed to state facts entitling respondent to Federal intervention, Judge Chapman held:

'(1) That to be entitled to injunctive relief against an action pending in a State Court the plaintiff must not only prove bad faith and harassment, which was alleged in this action, but also show that unless restrained the proceeding would cause grave and irreparable injury without providing any reasonable prospect that the State Court would respect and satisfactorily resolve the constitutional issue raised, which was not alleged or proved in the case.

'(2) That Judge Blatt's ruling in *Doe v. Pierce,* in regards to allowing questions as to solicitation, was solely because they might go to the issue of the appropriateness of the class action, and was in no way *res judicata* or acted as a collateral estoppel upon the Board or the Supreme Court of South Carolina.'

"The evidence presented indicated that the ACLU has only entered cases in which substantial civil liberties questions are involved, and that contrary to their former practice, they are now asking for fees, in addition to any damages that might be awarded to the plaintiffs, and that they are never reimbursed out of the damages awarded the plaintiffs.

"The evidence is inconclusive as to whether the respondent solicited Mrs. Williams on her own behalf, but she did solicit Mrs. Williams on behalf of the ACLU, which would benefit financially in the event of successful prosecution of the suit for money damages.

"Respondent's contention that her actions were protected by the First and Fourteenth Amendments of the United

States Constitution gives us some concern, but the other defenses are of little merit and will be disposed of first.

"Respondent's contention that Judge Blatt's ruling ■ in a preliminary hearing in the case of *Jane Doe and Mary Roe v. Clovis H. Pierce, M.D., et al.,* is *res judicata* or operates to estop the Board of Commissioners on Grievances and Discipline is patently erroneous. As stated in Respondent's own Pre-trial Memorandum, 'Under the Doctrine of *res judicata* a former judgment operates as a bar against a second action upon the same cause of action, but in a later action upon a different cause of action it operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action. *Lorber v. Vista Irrigation District,* 127 F. (2d) 628 ([10th] 9th Cir. 1942), *Exhibitor's Poster Exchange, Inc. v. National Screen Service Corp.,* 421 F. (2d) 1313 (5th Cir. 1970). The relevant inquiry into the application of this doctrine is identity of parties, subject matter, cause of action and whether or not the persons against whom estoppel is asserted had a full and fair opportunity for judicial resolution of the said issue.' In the case before Judge Blatt neither of the parties to this proceeding were parties, the subject matter and causes of action were totally different, and finally the complaint in this case had no opportunity for judicial resolution of the issue of solicitation.

"Respondent's contention that the proceedings were ■ initiated in retaliation because of her race, sex and in violation of the First and Fourteenth Amendments are not well taken. While respondent did introduce evidence of her race, sex and certain of her associational activities, there is a total lack of proof that the Board of Commissioners on Grievances and Discipline or the Attorney General issued the complaint against her in retaliation. Respondent properly takes the position that evidence is particularly suspect when it is procured by a party who is acting

adversely to the respondent in other litigation. However, the evidence here does not bear out her position that the complaint against her was initiated by the Office of the Attorney General, and even if it had been the Attorney General was not acting adversely to the respondent in other litigation in which she was a party, as the letter written to Mrs. Williams came to the attention of the Attorney General during proceedings in the case of *Jane Doe and Mary Roe v. Pierce.*

"Respondent contends that Rule 4 of the Rules of Disciplinary Procedure of the South Carolina Supreme Court is vague and overbroad. Misconduct is defined in Rule 4(b) as violation of any provision of the Canons of Professional Ethics as adopted by this Court from time to time. The Code of Professional Responsibility of the American Bar Association was adopted by the South Carolina Supreme Court on March 1, 1973. Canon 2 of the Code of Professional Responsibility deals specifically with solicitation. While the complaint may have been loosely drafted in that violation of Rule 4(d) of the South Carolina Disciplinary Rules was charged, wherein misconduct was defined as conduct tending to pollute or obstruct the administration of justice or to bring the Courts or the legal profession into disrepute, the specification of the charge was solicitation, and the Panel is of the opinion that violation of any of the disciplinary rules is such an action as would, at least, bring the legal profession into disrepute.

"In any event the Panel is of the opinion that respondent was fully apprised of the charges against her by the complainant, and even if she had not been, the proper procedure would have been by motion to have the complaint made more definite and certain.

"Disciplinary Rule 2-104(A) provides:

'(A) A lawyer who has given unsolicited advice to a layman that he should obtain counsel or take legal action

shall not accept employment resulting from that advice, except that:

\* \* \*

'(5) If success in asserting rights or defenses of his client in litigation in the nature of a class action is dependent upon the joinder of others, a lawyer may accept, but shall not seek, employment from those contacted for the purpose of obtaining their joinder.'

"Here, by respondent's own testimony, she met with Mrs. Williams in Aiken, gave unsolicited advice as to what her rights were as she, the respondent, saw them. Then respondent followed up with her letter of August 30, 1973, wherein she solicited Mrs. Williams to join in a class action suit for money damages to be brought by the ACLU. The seeking of and not the acceptance of employment is proscribed by DR 2-104A(5).

"Disciplinary Rule 2-103D(5) provides:

'(D) A lawyer shall not knowingly assist a person or organization that recommends, furnishes, or pays for legal services to promote the use of his services or those of his partners or associates. However, he may cooperate in a dignified manner with the legal service activities of any of the following, provided that his independent professional judgment is exercised in behalf of his client without interference or control by any organization or other person:

\* \* \*

'(5) Any other non-profit organization that recommends, furnishes or pays for legal services to its members or beneficiaries, but only in those instances and to the extent that controlling constitutional interpretation at the time of the rendition of the service requires the allowance of such legal service activities, and only if the following conditions, unless prohibited by such interpretation, are met:

"(a) The primary purposes of such organizations do not include the rendition of legal service.

\* \* \*

"(c) Such organization does not derive a financial benefit from the rendition of legal service by the lawyer." '

\* \* \*

"Testimony at the hearing established that one of, if not the primary purpose of the ACLU, was the rendition of legal services. It was also set out in respondent's Pre-trial Memorandum that the ACLU and its state affiliates on any given day are involved in several thousand active cases throughout the country. It is, also, the policy of the ACLU to ask for attorneys' fees in their lawsuits, and their fees go into its central fund and are used among other things to pay costs and salaries and expenses of staff attorneys.

"Consequently, the Panel is of the opinion that the respondent has violated Disciplinary Rule 2-103(D)(5)(a), (c) and is therefore guilty of solicitation.

"In the case of *NAACP v. Button,* 371 U. S. 415, 9 L. Ed. (2d) 405, 83 S. Ct. 328, the facts revealed that the State of Virginia had statutory regulations of unethical conduct of attorneys from 1849, which forbade solicitation of legal business in the form of 'running' or 'capping'. Prior to 1956 no attempt was made to proscribe under such regulations the activities of the NAACP, which had been carried on openly for years. In 1956, however, the Virginia Legislature amended the Virginia Code by passage of Chapter 33, forbidding solicitation of legal business by a 'runner' or 'capper' to include in the definition of 'runner' or 'capper' an agent for an individual or organization which retains a lawyer in connection with an action to which it is a party and in which it has no pecuniary right or liability. The Supreme Court in its decision stated 'the only issue before us is this constitutionality of Chapter 33, as applied to the NAACP.'

"The final query then is was the solicitation protected under the First and Fourteenth Amendments, as earnestly urged by respondent. DR 2-103(D)(5) specifically recognizes the inherent constitutional problems

and provides for the same by allowing an attorney to cooperate with the legal service activities of a 'non-profit organization that recommends, furnishes, or pays for legal services to its members or beneficiaries, *but only in those instances, and to the extent that controlling constitutional interpretation at the time of the rendition of the services requires the allowance of such legal service activities, and only if the following conditions, unless prohibited by such interpretation, are met. . . .*' Thus, DR2-103(D) (5) prohibits solicitation except where controlling constitutional interpretations mandate the allowance of the specific service. Furthermore, in order for an attorney to solicit on behalf of a non-profit organization, the four conditions of DR 2-103(D)(5) (a-d) must be met unless application of these four conditions has, jointly or severally, been prohibited by controlling constitutional interpretations.

"The first of the above mentioned four conditions is that '[t]he primary purposes of [non-profit] organizations do not include the rendition of legal services.' The ACLU, the non-profit organization herein involved, by its own admission, may have several thousand lawsuits in progress at any one day and they classify themselves as private attorneys general. It follows, therefore, that its primary purpose is the rendition of legal services. This Panel has not found, nor has it been furnished with, any case showing that a state is prohibited, on constitutional grounds, from regulating the activities of attorneys' soliciting clients on behalf of a non-profit organization which has as one of its primary purposes the rendition of legal services. Respondent relies on four cases: *NAACP v. Button, supra,* 371 U. S. 415, 9 L. Ed. (2d) 405, 83 S. Ct. 328; *Brotherhood of Railroad Trainmen v. Virginia,* 377 U. S. 1, 12 L. Ed. (2d) 89, 84 S. Ct. 1113; *United Mine Workers v. Illinois Bar Association,* 389 U. S. 217, 19 L. Ed. (2d) 426, 88 S. Ct. 353 and *United Transportation Union v. State Bar of Michigan,* 401 U. S. 576, 28 L. Ed. (2d) 339, 91 S. Ct. 1076. None of the four non-profit organizations involved in the above cases, has as

one of its primary purposes, the rendition of legal services. In *NAACP v. Button,* the court addresses itself to the legal services rendered by the NAACP. However, the court appears to characterize the NAACP as a political, rather than legal organization, and depicts litigation as an adjunct to the overriding political aims of the organization.

"That the American Bar Association considered the aspect of the NAACP case is obvious from the fact that the second of the above conditions allows solicitation where 'the recommending, furnishing, or paying for legal services to its members is incidental and reasonably related to the primary purposes of such organization.' As pointed out litigation is the primary purpose of the ACLU; it is not simply incidental to its primary purpose. This condition is not constitutionally prohibited, but is rather constitutionally required by *NAACP v. Button.*

"In that there is no question but that the respondent has not violated the second and third conditions of DR 2-103 (D)(5), there is no need to question whether they are constitutionally prohibited or not.

"Respondent has, therefore, violated DR 2-103(D)(5) (a) by attempting to solicit a client for a non-profit organization which, as its primary purpose, renders legal services, where respondent's associate is a staff counsel for the non-profit organization. If respondent's contention that her actions were protected by the First and Fourteenth Amendments of the Constitution were upheld, it would amount to a holding that the pertinent provision of Canon 2 of the Code of Professional Responsibility was unconstitutional, which we are not prepared to do."

It is therefore ORDERED that petitioner, Edna Smith, be and she hereby is publicly reprimanded.